**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| NAGRAVISION SA, | § § § | Case No. 2:17-cv-396 |
| Plaintiff, | § § | Jury Trial Demanded |
| vs. | § § | |
| NFL ENTERPRISES, LLC | § § | |
| Defendant. | § § § § § | |

**<u>NAGRAVISION SA'S COMPLAINT FOR PATENT INFRINGEMENT</u>**

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Nagravision SA ("Nagravision") by and through the undersigned counsel, hereby brings this action and makes the following allegations of patent infringement relating to U.S. Patent No. 6,154,172, against Defendant NFL Enterprises, LLC ("NFLE"), and alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

**NATURE OF THE ACTION**

1. This is an action for patent infringement. Nagravision alleges that NFLE infringes U.S. Patent No. 6,154,172 ("the '172 Patent"), a copy of which is attached as Exhibit A.

2. Nagravision alleges that NFLE directly and indirectly infringes the '172 Patent by making, using, testing, licensing, offering for sale/license, and selling its online video services and inducing and contributing to the infringement of others. Nagravision seeks damages and other relief for NFLE's infringement of the '172 Patent.

**THE PARTIES**

3. Plaintiff Nagravision is a Swiss corporation with its principle place of business in Cheseaux-sur-Lausanne, Switzerland. Nagravision is a wholly owned subsidiary of Kudelski S.A. (the "Kudelski Group").

4. Upon information and belief, Defendant NFLE is a Delaware limited liability corporation with its principal office at 280 Park Avenue, 15th Floor, New York, NY 10017. NFLE can be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

5. According to NFLE's website, NFLE offers infringing products and services for sale and use throughout the United States, including in the Eastern District of Texas. In addition, NFLE advertises its infringing products and services throughout the Eastern District of Texas and claims financial benefits through conducting its business in Texas.

## JURISDICTION AND VENUE

6. This action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. § 1 et. seq. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338.

7. This Court has both general and specific personal jurisdiction over NFLE because NFLE has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over NFLE would not offend traditional notions of fair play and substantial justice. Defendant NFLE, directly and through subsidiaries and intermediaries (including distributors, retailers, franchisees and others), has committed and continues to commit acts of infringement in this District by, among other things, making, using, testing, selling, licensing, importing, and/or offering for sale/license products and services that infringe the '172 Patent.

8. Venue is proper in this District and division under 28 U.S.C. §§1391(b)-(d) and 1400(b) because NFLE has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

## BACKGROUND

A. **Nagravision**

9. Nagravision designs and manufactures widely-used, critically acclaimed and award-winning digital media technologies, and protects its research and development investment

with a robust patent portfolio comprising thousands of patents that represent the results of years of innovation, investment and effort by numerous inventors and engineers.  Nagravision encourages innovation by licensing its intellectual property portfolio and enforces its patent rights when necessary to protect its research investment and the fruits of the efforts of its employees from unauthorized use.

10. The history of The Kudelski Group is one highlighted by 65 years of innovation, award winning products, and loyal, long-term customers who entrust the Kudelski Group with their business.  Today, the Kudelski Group is a major employer in the United States, Europe, Asia, and elsewhere, providing jobs in manufacturing, engineering, research and development, marketing, sales, and many other specialties, with headquarters in Cheseaux-sur-Lausanne, Switzerland and Phoenix, Arizona.

11. The Kudelski Group was founded in 1951 by Stefan Kudelski successfully launching portable recording devices for cinema, TV and radio recording.  The success of its products allowed The Kudelski Group to expand its technology into the digital television domain.  In 1989, The Kudelski Group launched its first conditional access systems for pay TV.  Over the next 10 years (1990-1999) The Kudelski Group continued to expand its technology development in the digital TV space, providing global, universally compatible solutions to manage, organize, enhance, market, and secure digital content.  Today, The Kudelski Group is led by Stefan's son, Andre Kudelski, and Andre Kudelski has led the company into an era where digital television is The Kudelski Group's core business.

12. Throughout his career, Stefan Kudelski received numerous awards and honors for his technological achievements.  For example, Mr. Kudelski received four Oscars from the Academy of Motion Picture Arts and Sciences: three Scientific or Technical Awards in 1965,

1977, 1978, and the Gordon E. Sawyer Award in 1990.  Mr. Kudelski also received two Emmy Awards, as well as Gold Medals from L. Warner, Audio Engineering Society, Lyra and Eurotechnica.  Mr. Kudelski was also recognized by the FBI for his technology contribution in audio recording.

13. The success of its products allowed The Kudelski Group to expand its technology into the digital television domain.  In 1989, The Kudelski Group launched its first conditional access system for pay TV.  Over the next decade, The Kudelski Group continued to expand its technology development in the digital TV space, providing global, universally compatible solutions to manage, organize, enhance, market, and secure digital content, regardless of whether it was transmitted over managed or unmanaged networks and broadcasted linearly or on-demand.

14. Today, digital television is The Kudelski Group's core business.  With that, The Kudelski Group has become a world leader in digital security and convergent media solutions for the delivery of digital and interactive content. The Kudelski Group's innovations are continuously contributing to the evolution of the digital television ecosystem, enabling operators to extend their multimedia offerings across the entire digital ecosystem to numerous client devices through traditional managed networks as well as Internet delivery.

15. The Kudelski Group has also grown as a leader in the digital television domain through acquisitions of pioneering technology companies, including such notable companies as Lysis (2001), Livewire (2001), MediaGuard (2004), SmarDTV (2006), OpenTV (2007), and Conax (2014).

16. Nagravision is the owner of all right title and interest in the '172 Patent.  The '172 Patent covers key technology in online digital television services.

**B. NFLE**

17. Upon information and belief, NFLE was formed in 2002 as a limited liability company in Delaware.

18. Upon information and belief, NFLE offers products and services that are widely used in this District and throughout the United States, including but not limited to, the following applications that provide, among other things, a streaming interactive video content experience to users: NFL.com, Watch NFL Network/NFL Redzone, NFL Now, NFL Game Pass, NFL Mobile, the NFL App, and NFL Fantasy Football. These applications and services are provided to users in various forms on numerous content platforms including, but not limited to, mobile phones and tablets, personal computers, set-top boxes and streaming media connected devices.

### COUNT 1: INFRINGEMENT OF THE '172 PATENT

19. The allegations of paragraphs 1-18 of this Complaint are incorporated by reference as though fully set forth herein.

20. Nagravision owns by assignment the entire right, title, and interest in the '172 Patent.

21. The '172 Patent was issued by the United States Patent and Trademark Office on November 28, 2000 and is titled "System and Process for Limiting Distribution of Information on a Communication Network Based on Geographic Location." A true and correct copy of the '172 Patent is attached hereto as Exhibit A.

22. Pursuant to 35 U.S.C. § 282, the '172 Patent is presumed valid.

23. A person of ordinary skill in the art reading the '172 Patent would understand that the patent's disclosure and claims are rooted in complex computer-implemented operations that require complex computer hardware and software technologies that can be used to overcome the problem of how to control and limit distribution of information from an electronic

communication unit such as a server to geographically remote communication units (e.g., user computers) connected via the Internet. By way of example, an electronic communication unit such as a server may limit access to information based on geographic location data associated with remote communication units where the data is supplied by a GPS (global positioning system) signal or other electronic means. For example, data corresponding to user computer locations may be processed by the server in a specialized comparison routine to determine whether or not the coordinates are within a restricted region. The server may then perform another specialized routine to deny information to the user computer based on the geographic location, or to provide over the Internet communication network only certain information to the restricted region computer. However, if the user computer is located outside the restricted area, the server may perform a specialized routine to determine the user's location from the location data and to provide over the Internet to the unrestricted user computer different information than that available to a restricted computer.

24.     Upon information and belief, NFLE has directly infringed at least Claim 19 of the '172 Patent in violation of 35 U.S.C. § 271 *et seq*., by making, using, testing, selling, licensing, importing, and/or offering for sale/license without authority GamePass and NFL Mobile browser or app-based clients and associated servers implementing geographic restrictions or "black-outs" (collectively, "the '172 Infringing Instrumentalities") in the exemplary manner described below:

      A. One or more of the '172 Infringing Instrumentalities meet all the elements of at least Claim 19 of the '172 Patent. In particular, as an example, NFL GamePass and NFL Mobile are server-client media platforms using the Internet as the transmission medium; with one or more game content and control servers representing a first communication unit and one or more

geographically remote GamePass and/or NFL Mobile clients (e.g. browser-based or app-based clients) representing a second communications unit, where the GamePass/NFL Mobile/NFL servers control communications with the user computer device clients;



*NFL Game Pass.*



*NFL Mobile Android platform app support screen showing geographic restriction/black out features.*

B. One or more of the '172 Infringing Instrumentalities receives location information over the Internet with the first communications unit, the location information corresponding to the geographic location of the second communications unit and determines, from the location information, whether

7

the geographic location of the second communications unit is within a predefined geographic region.  In particular, as an example, the NFL GamePass/NFL Mobile Internet platforms implement geographic restrictions or blackouts.  For example, the availability of GamePass/NFL Mobile programming is dependent on the client computer IP address and Internet routing information, which correlates to a geographic location and may trigger a blackout/geographic restriction.  *See* https://digitalcare.nfl.com/hc/en-us/articles/218099028-Unavailable-in-Your-Area-on-Mobile-or-Tablet;



Based on the location information received from a GamePass/NFL Mobile electronic computing device client during the log-on sequence, the NFL GamePass/NFL Mobile server determines whether the client is in a predefined geographic region, e.g., the United States or a region within the United States that is subject to a game black-out restriction:

8

```
27              <userName><![CDATA[claywt22]]></userName>
28              <firstName><![CDATA[claywt22]]></firstName>
29          </user>
30          <subscription>SEASON_PLUS</subscription>
31          <!--<sponsor>visa</sponsor>-->
32          <isGPDomestic>true</isGPDomestic>
33          <nflAccessToken>eyJhbGciOiJIUzI1NiJ9.eyJ1c2VybmFtZSI6ImNsYXl3dDIyIiwiZGV2aW
34          <nflConcurrentId>f89be8f0-f0c1-3de1-cf96-cbc87f000001</nflConcurrentId>
35      <country>US</country>
```

*See, e.g., GamePass simpleconsole.xml file.*

C. One or more of the '172 Infringing Instrumentalities controls the communication of further information between the first and second communications units, dependent upon the determination of whether the second communication unit is within the predefined geographic region. In particular, as an example, the NFL GamePass/NFL Mobile Internet platforms implement game "black-outs" based on country and in-country (e.g., "out-of-market") geographic location of the GamePass and NFL Mobile clients. Using GamePass as an example, after the user selects a game to watch, the GamePass client requests and receives XML data corresponding to individual games in files called games.xml. As indicated by the code in file SearchModule.as, the XML data in games.xml files can contain tags called <noAccess> and <blocked> with values that may be set to "true" or "false" depending on the client computing device's location information. In this manner the GamePass server controls communication of game information based on whether the client computing device is within a predetermined geographic region. NFL Mobile servers use a similar technique to implement game "black-outs" based on the geographic location of the NFL Mobile client requests.

```
201
202              if (_loc_4.noAccess.length() > 0)
203              {
204                  _loc_2.noAccess = true;
205              }
206              if (_loc_4.blocked.length() > 0)
207              {
208                  _loc_2.blocked = true;
209
```

*See, e.g., GamePass SearchModule.as file.*

D. One or more of the '172 Infringing Instrumentalities provides the second communications unit with access to first information in the event that the geographic location of the second communications unit is determined to be within the predefined region and provides the second communications unit with access to second information in the event that the geographic location of the second communications unit is determined to not be within the predefined region wherein said second information includes information different from said first information. In particular, as an example, the NFL GamePass/NFL Mobile Internet platform server may allow a client computing device access to a particular game content or disallow such access based on the GamePass client computing device's location. If the game is not blocked, the client goes on to display the selected game.

```
899               else
900               {
901                   _loc_6 = 0;
902                   while (_loc_6 < this.m_lastLiveGames.length)
903                   {
904
905                       _loc_7 = this.m_lastLiveGames[_loc_6];
906                       if (!_loc_7.noAccess && !_loc_7.blocked && _loc_7.elias == _loc
```

*See e.g., GamePass BaseGamesComponent.as file.*

> In this case a video file for the game is provided over the Internet from the NFL GamePass content server (in this case a Neulion content server operating under the direction and control of NFLE) in response to a GET command:

```
4928        "method": "GET",
4929        "url": "http://nlds21.cdnl3nl.neulion.com/nlds/nfl/nfltv/as/live/nfltv_hd_1600/20170504/17/3120.m
4930        "httpVersion": "HTTP/1.1",
```

*GamePass BaseGamesComponent.as file.*

> In case the client computing device is in a restricted / blacked-out geographic location, access to alternative content is made available to the client device that does not include the game feed.

25. NFLE has thus infringed, and continues to infringe, at least Claim 19 of the '172 Patent by making, using, testing, selling, licensing, importing, and/or offering for sale/license the '172 Infringing Instrumentalities, and operating them such that all steps of at least Claim 19 of the '172 Patent are performed, including within this District. Moreover, NFLE fully implements, manages, and supports the '172 Infringing Instrumentalities by its customers.

26. NFLE's customers have been and are now infringing, including under 35 U.S.C. §271(a), at least Claim 19 of the '172 Patent by using the '172 Infringing Instrumentalities.

27. NFLE has, by no later than the filing of this Complaint, known or been willfully blind to the fact that such acts by its customers of using the '172 Infringing Instrumentalities directly infringe at least Claim 19 of the '172 Patent.

28. NFLE's knowledge of the '172 Patent, which covers operating the '172 Infringing Instrumentalities in their intended manner and such that all limitations of at least Claim 19 of the '172 Patent are met, made it known to NFLE that its customers' use of the '172 Infringing Instrumentalities would directly infringe the '172 Patent, or, at the very least, rendered NFLE willfully blind to such infringement.

29. Having known or been willfully blind to the fact that its customers' use of the '172 Infringing Instrumentalities in their intended manner and such that all limitations of at least Claim 19 of the '172 Patent are met would directly infringe the '172 Patent, NFLE, upon information and belief, actively encouraged and continues to actively encourage its customers to directly infringe the '172 Patent by using, selling, licensing, offering to sell/license, or importing the said '172 Infringing Instrumentalities, and, by, for example, marketing the '172 Infringing Instrumentalities to customers; working with its customers to implement, install and operate the '172 Infringing Instrumentalities and components thereof; fully supporting and managing its customers' continued use of the '172 Infringing Instrumentalities; and providing technical assistance to customers during their continued use of the '172 Infringing Instrumentalities. (*See*, *e.g.*, http://nflnonline.nfl.com/; https://digitalcare.nfl.com/hc/en-us/categories/200275708-NFL-Game-Pass; https://digitalcare.nfl.com/hc/en-us/categories/200275728-NFL-Mobile-App.)

30. NFLE induces its users to infringe at least Claim 19 of the '172 Patent at least by encouraging them to install and operate the '172 Infringing Instrumentalities, which, alone or in combination with the users' devices, satisfy all the limitations of at least Claim 19 of the '172 Patent. For example, NFLE advertises and promotes the features of its GamePass and NFL Mobile applications on its websites NFL.com and nflnonline.nfl.com, and encourages its users to configure and operate their mobile and computer devices in an infringing manner (*see, e.g.*, http://nflnonline.nfl.com/; https://digitalcare.nfl.com/hc/en-us/categories/200275708-NFL-Game-Pass; https://digitalcare.nfl.com/hc/en-us/categories/200275728-NFL-Mobile-App). In response, NFLE's users acquire, configure and operate the '172 Infringing Instrumentalities such that all the limitations of at least Claim 19 of the '172 Patent are practiced.

31. Thus, NFLE has specifically intended to induce, and has induced, its customers to

infringe at least Claim 19 of the '172 Patent, and NFLE has known of or been willfully blind to such infringement. NFLE has advised, encouraged, and/or aided its customers to engage in direct infringement, including through its encouragement, advice and assistance to customers to use the '172 Infringing Instrumentalities.

32. Based on, among other things, the foregoing facts, NFLE has induced, and continues to induce, infringement under 35 U.S.C. § 271(b) of at least Claim 19 of the '172 Patent.

33. Further, NFLE sells, provides and/or licenses to its customers '172 Infringing Instrumentalities that are especially made and adapted—and specifically intended by NFLE—to be used as components and material parts of the inventions covered by the '172 Patent. For example, NFLE provides applications and software, such as NFL GamePass and NFL Mobile, which customers configure and use in a manner such that all limitations of at least Claim 19 of the '172 Patent are met, and without which, NFLE's customers would be unable to use and avail of the '172 Infringing Instrumentalities in their intended manner.

34. Upon information and belief, NFLE also knew that the '172 Infringing Instrumentalities operate in a manner that satisfy all limitations of at least Claim 19 of the '172 Patent.

35. The geographic restriction/blackout functionality in the '172 Infringing Instrumentalities is specially made and adapted to infringe at least Claim 19 of the '172 Patent. Upon information and belief, the geographic restriction/blackout functionality in the '172 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '172 Infringing Instrumentalities solely in a manner that is covered by at least claim 19 of the '172 Patent, it does not have a substantial non-

infringing use. By no later than the filing of this Complaint, based on the forgoing facts, NFLE has known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—'172 Infringing Instrumentalities in a manner that is covered by the '172 Patent.

36. Based on, among other things, the foregoing facts, NFLE has contributorily infringed, and continues to contributorily infringe, at least Claim 19 of the '172 Patent under 35 U.S.C. § 271(c).

37. Defendant's acts of direct and indirect infringement have caused, and continue to cause, damage to Plaintiff, and Plaintiff is entitled to recover from damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial. The infringement of Plaintiff's exclusive rights under the '172 Patent has damaged and will continue to damage Plaintiff, causing irreparable harm, for which there is no adequate remedy at law, with the balance of hardships between Plaintiff and Defendant, and the public interest, warranting an injunction.

## PRAYER FOR RELIEF

WHEREFORE, Nagravision prays for the following relief:

A. A judgment that NFLE has infringed one or more claims of the '172 Patent literally and/or under the doctrine of equivalents directly and/or indirectly by inducing infringement and/or by contributory infringement;

B. That this Court award Nagravision its damages pursuant to 35 U.S.C. § 284 and any royalties determined to be appropriate for NFLE's infringement of the '172 Patent;

      C.      That this be determined to be an exceptional case under 35 U.S.C. § 285 and that Nagravision be awarded enhanced damages up to treble damages for willful infringement as provided by 35 U.S.C. § 284;

      D.      That this Court award Nagravision prejudgment and post-judgment interest on its damages;

      E.      An order permanently enjoining NFLE and its officers, agents, employees, and those acting in privity with them, from further infringement of the '172 Patent;

      F.      That Nagravision be granted its reasonable attorneys' fees in this action;

      G.      That this Court award Nagravision its costs; and

      H.      That this Court award Nagravision such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nagravision demands a trial by jury for all issues so triable.

Dated:  May 8, 2017

/s/ *Margaret Elizabeth Day by permission Andrea Fair*
Margaret Elizabeth Day
FEINBERG DAY ALBERTI & THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, CA  94025
Telephone: (650) 618.4360
Facsimile:  (650) 618.4368
eday@feinday.com

Wesley Hill
Texas State Bar No. 24032294
wh@wsfirm.com
Andrea L. Fair
Texas State Bar No. 24078488
andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
PO BOX 1231
Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff Nagravision SA.*